UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL MATERNOWSKI, o.b.o.
TAMMY MATERNOWSKI,

      Plaintiff,                                    Hon. Ellen S. Carmody

v.                                                      Case No. 1:11-CV-784

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## **OPINION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. On October 25, 2011, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #7).

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and this matter remanded for the awarding of benefits**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 48 years old on the date of the ALJ's decision. (Tr. 34, 50). She completed the ninth grade and worked previously as a home health care aide and bartender. (Tr. 145, 157-59, 173-75). Plaintiff applied for benefits on November 29, 2005, alleging that she had been disabled since November 4, 2005, due to back pain, emphysema, high blood pressure, asthma, panic attacks, COPD, depression, sleep apnea, allergies, reflux, and hypertension. (Tr. 39, 186).

Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 51-106). On May 14, 2008, Plaintiff appeared before ALJ William Reamon, with testimony being offered by Plaintiff and vocational expert, Michelle Ross. (Tr. 566-605). In a written decision dated October 24, 2008, the ALJ determined that Plaintiff was not disabled. (Tr. 39-50). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 27-32).

On November 29, 2008, Plaintiff filed another application for disability benefits. (Tr. 10). On July 6, 2009, Plaintiff passed away as a result of "sudden cardiac arrhythmia." (Tr. 145, 525-36). On August 5, 2011, ALJ Tammy Thames found that Plaintiff was disabled beginning on October 25, 2008, through June 1, 2009, the month preceding her death. (Tr. 10-17). Plaintiff's husband initiated the present action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of ALJ

Reamon's determination that Plaintiff was not disabled during the closed period from November 4, 2005, through October 24, 2008.

### RELEVANT MEDICAL HISTORY

On September 19, 2005, Plaintiff reported to the emergency room complaining of "shortness of breath" and "chronic low back pain." (Tr. 229-38). Plaintiff exhibited "acute shortness of breath and decreased [oxygen] saturations." (Tr. 229). The results of various laboratory tests were "within normal limits" and a chest x-ray revealed "no acute cardiopulmonary process." (Tr. 229, 238).

On September 28, 2005, Plaintiff participated in a CT examination of her brain the results of which revealed "mild to moderate mucus membrane thickening [of the] bilateral ethmoid sinuses consistent with chronic inflammatory disease,"[1] but was otherwise "normal." (Tr. 273).

On November 5, 2005, Plaintiff was taken to the hospital after experiencing "shortness of breath and right side pleuritic pain for several days." (Tr. 244). Plaintiff was diagnosed with pneumonia and COPD and remained in the hospital until November 14, 2005 at which point she was discharged home. (Tr. 244-65).

On December 7, 2005, Plaintiff participated in an MRI examination of her lumbar spine the results of which revealed: (1) severe disc degeneration at the L4-5 level with grade I spondylolisthesis[1] of L4 in relation to L5, as well as severe bilateral foraminal compromise; (2)

---

[1] Inflammation represents the body's "adaptive immune response to tissue injury or infection." *See* Chronic Inflammation, available at http://www.lef.org/protocols/health_concerns/chronic_inflammation_01.htm (last visited on September 13, 2012). Chronic inflammation is a contributing factor in at least seven of the ten leading causes of mortality in the United States. *Id.*

[1] Spondylolysis is a "defect in the connection between [the] vertebrae" which results from "a weakness in a section of the vertebra called the pars interarticularis, the thin piece of bone that connects the upper and lower segments of the facet joints."

4

degenerative changes and mild focal central disc protrusion at L5-S1; and (3) mild broad based disc protrusion at L2-3. (Tr. 457-58).

On March 21, 2006, Plaintiff reported to the emergency room after experiencing a "one week course of progressive shortness of breath" despite "taking her respiratory treatments at home." (Tr. 270). An examination revealed that Plaintiff "was having a productive cough with green and brown sputum" and "was having significant wheezing and [was] unable to speak in complete sentences on initial evaluation." (Tr. 270). Plaintiff was diagnosed with COPD and was admitted to the hospital where she began a course of "intravenous steroids which took some time to take full effect." (Tr. 266). Plaintiff was discharged from the hospital on March 28, 2006. (Tr. 266).

On May 22, 2006, Plaintiff reported to the hospital complaining of "shortness of breath and cough." (Tr. 284-87). Treatment notes indicated that Plaintiff "has been battling a pneumonia off and on for approximately the last six months." (Tr. 284). Plaintiff reported that she "has been very congested with a brownish sputum at home." (Tr. 284). Plaintiff was diagnosed with pneumonia, diabetes, hypertension, obesity, and chronic back pain and admitted to the hospital. (Tr. 276-87). Plaintiff was provided various treatments and discharged from the hospital on May 25, 2006. (Tr. 276-87).

On June 11, 2006, Plaintiff reported to the hospital complaining of "altered mental status" and "near syncope type symptoms." (Tr. 303-05). Treatment notes indicate that Plaintiff "has been having increasing shortness of breath and lethargy over the last 48 hours" and was "found to be hypoxic" on admission. (Tr. 303, 306). Plaintiff was admitted to the hospital "for further

---

Spondylolysis, available at http://my.clevelandclinic.org/disorders/Back_Pain/hic_Spondylolysis.aspx (last visited on September 13, 2012). This defect "can lead to small stress fractures (breaks) in the vertebrae that can weaken the bones so much that one slips out of place, a condition called spondylolisthesis." *Id.*

5

work-up, treatment and evaluation." (Tr. 306). A CT scan of Plaintiff's chest revealed "no evidence of pulmonary embolism" and x-rays of her chest revealed "no acute intrathoracic process." (Tr. 315, 317). Plaintiff responded quickly to treatment and it was determined that Plaintiff had experienced hypoxia resulting from carbon monoxide exposure from a heater located in her house. (Tr. 303-05). Plaintiff was discharged from the hospital on June 14, 2006. (Tr. 303).

On August 21, 2006, Plaintiff was examined by Dr. David Walker "for evaluation of snoring and witnessed apnea, as well as trouble with going to sleep and maintaining sleep." (Tr. 324-28). Plaintiff's husband reported that Plaintiff "snores loud enough to disturb his sleep and sometimes stops breathing." (Tr. 324). He further reported that Plaintiff "never sleeps more than 1 ½ to 2 hours straight." (Tr. 324). Plaintiff reported that this condition "has progressively worsened over the last year" and that "she is falling asleep at any time during the day and driving, when she is relaxed." (Tr. 324). The doctor's initial assessment was that Plaintiff was experiencing "disorder of initiation and maintenance of sleep" and "chronic insomnia due to poor sleep hygiene as well as medications and chronic pain." (Tr. 326). On September 7, 2006, Plaintiff participated in an overnight polysomnography study the results of which revealed the following:

    1.    Central obstructive sleep apnea most likely drug-induced from methadone and Duragesic and contributed to by Xanax and Valium.

    2.    Hypoxemia most likely secondary to mild respiratory depression and hypoventilation secondary to drug effect.

    3.    Suspect obstructive apnea as well. Cannot exclude drug induced as well as history, especially with snoring and witnesses apnea at home and the examination I did on consultation.

    4.    Insomnia due to drug or substance insomnia secondary to inadequate sleep hygiene.

    5.    Insomnia secondary to medical conditions, ie chronic pain and acid reflux.

    6.    Severe daytime sleepiness associated with: (1) obstructive sleep apnea; (2) central sleep apnea; (3) hypoxemia.

    7.    Hypersomnia due to drug or substance.

    8.    Hypersomnia due to medical condition.

    9.    Insomnia due to mental disorder (mood disorder).

(Tr. 322).

Dr. Walker concluded that:

> I think Tammy might benefit from positive airway pressure, however I think the central apneas are drug induced and positive airway pressure will not help that, only discontinuing the drugs will. She did not have any Cheyne-Stoke respiration pattern that could be secondary to CNS or heart origin. She might require a bilevel with ST but oxygen 1 liter by nasal cannula or two liters may be helpful in increasing oxygen saturations but unfortunately will not do anything to improve respiratory events, either central or obstructive. I did advise her not to drive sleepy, fatigued or with cruise control.
>
> If she is on Valium and Xanax, consider weaning her off and placing her on BuSpar or if a benzodiazepine is needed, change her if possible to Alprazolam or Clonazepam. Discontinuing smoking is important as well.

(Tr. 323).

On November 9, 2006, Plaintiff participated in a sleep/CPAP titration evaluation conducted by Dr. Walker. (Tr. 320-21). The results of this evaluation revealed the following:

> SLEEP ARCHITECTURE: the total recording time was 489.5 minutes. The total sleep time was 372 minutes. The sleep efficiency was 76% with normal being 85% or greater. The overnight study

>revealed poor sleep efficiency, very light stages of sleep and reduced REM sleep with fragmentation of sleep predominantly from central apneas that were seen most prominently after her obstructive apneas were treated. Sleep latency was very quick at four minutes, very prolonged REM latency and wake time after sleep onset was significantly elevated. No observed stages three and four. Reduced REM sleep.
>
>EKG MONITOR: The EKG monitor revealed no abnormal dysrhythmias.
>
>OXIMETRY: Despite positive airway pressure, she still had about 90 minutes with desaturations below 88%.
>
>RESPIRATORY SUMMARY: The apnea/hypopnea index (AHI) was still 21 but that was calculated for only a sleep time of 29 minutes. She had to have oxygen in-line of at least one liter per minute and I think this is due to pain medications causing respiratory suppression as well as underlying COPD. Her sleep just did not look good; not very good continuity of sleep and frequent awakenings noted without periodic leg movements.

(Tr. 320-21).

On December 15, 2006, Plaintiff participated in an arterial ultrasound examination of her lower extremities the results of which revealed "normal post exercise ankle brachial indices bilaterally" and "slight diminished pressures in the dorsalis pedis bilaterally, but no findings of significant arterial occlusive disease." (Tr. 448).

On April 21, 2007, and April 27, 2007, Dr. Louis Praamsma completed questionnaires concerning Plaintiff's residual functional capacity. (Tr. 537-45). The doctor reported that Plaintiff's "experience of pain or other symptoms" was "frequently" severe enough "to interfere with attention and concentration needed to perform even simple work tasks." (Tr. 538, 542). The doctor reported that Plaintiff was "incapable of even low stress jobs." (Tr. 538). The doctor reported that Plaintiff was unable to walk even one block "without rest or severe pain." (Tr.

8

539). The doctor reported that Plaintiff can continuously sit and stand for 15 minutes each. (Tr. 539, 543). The doctor reported that during and eight-hour workday, Plaintiff could sit and stand/walk for less than two hours each. (Tr. 539, 543). The doctor reported that Plaintiff required a sit/stand option and would need to take unscheduled breaks during an eight-hour workday. (Tr. 543). The doctor reported that Plaintiff can "rarely" lift and carry less than 10 pounds in a competitive work environment and can "never" lift more than 10 pounds in a competitive work environment. (Tr. 544). The doctor reported that Plaintiff can occasionally twist, stoop, crouch/squat, and climb ladders and stairs. (Tr. 539).

At the administrative hearing, Plaintiff reported that she was unable to work due to lower back pain which radiated into her left leg. (Tr. 573-74). Plaintiff reported that because of her back pain she is unable to vacuum, sweep, mop, lift, or wash laundry. (Tr. 574). Plaintiff reported that because of her back pain she often has to lay in a reclining chair for approximately 30 minutes several times throughout the day. (Tr. 575-76). Plaintiff testified that she could stand in one spot for "maybe 10 minutes" and could walk "maybe a block and a half" after which she would be unable to breathe. (Tr. 576-77). Plaintiff testified that she experiences almost constant breathing difficulties which are only partially relieved by her inhalers or oxygen. (Tr. 578-80). Plaintiff testified that she also experiences significant difficulty sleeping and as a result has to take several naps throughout the day. (Tr. 581-83).

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v.*

---

[2]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

*Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from chronic obstructive pulmonary disease (COPD), asthma, lumbar spondylolisthesis/degenerative disc disease, obesity, panic disorder without agoraphobia, and dysthymia, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 41-44).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) she can perform only unskilled, simple, routine tasks; (2) she can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; (3) she can occasionally balance, stoop, kneel, crouch, and crawl; (4) she cannot be exposed to fumes, odors, dusts, gases, areas with poor ventilation, or extremes of temperature or humidity; (5) she cannot perform jobs which require more than two hours of sustained concentration with normal breaks for lunch and dinner; (6) she can have only occasional contact with the general public; and (7) she requires the option to sit or stand at will. (Tr. 44).

The ALJ concluded that Plaintiff was unable to perform any of her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden.

*O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Michelle Ross.

The vocational expert testified that there existed approximately 12,100 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 599-601). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

      a.      The ALJ Did Not Properly Evaluate the Medical Evidence

As previously noted, Dr. Praamsma opined that Plaintiff suffered from far more extensive limitations than recognized by the ALJ. Specifically, the doctor reported that due to Plaintiff's "experience of pain or other symptoms," she "incapable of even low stress jobs." The doctor reported that Plaintiff was unable to walk even one block "without rest or severe pain." Dr. Praamsma reported that Plaintiff can continuously sit and stand for only 15 minutes each and, during an eight-hour workday, she can sit and stand/walk for less than two hours each. The doctor reported that Plaintiff required a sit/stand option and would need to take unscheduled breaks during the

workday. The doctor reported that Plaintiff can "rarely" lift and carry less than 10 pounds and can "never" lift more than 10 pounds. The vocational expert testified that if Plaintiff were impaired to the extent described by Dr. Praamsma, there existed no work which Plaintiff could perform. (Tr. 602-03). Plaintiff asserts that because Dr. Praamsma was her treating physician, the ALJ was obligated to afford controlling weight to his opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

The ALJ's rationale for discounting Dr. Praamsma's opinions does not survive scrutiny. The ALJ accorded "greatly reduced weight" to Dr. Praamsma's opinion on the ground that he "is neither a pulmonary specialist, or an orthopedic surgeon." (Tr. 46). The ALJ further observed that the medical record contained "no compelling reference to clinical examination findings relative to [Plaintiff's] low back problems that would lend support to the severe limitations [the doctor] has attributed to [Plaintiff]." (Tr. 46-47).

First, with respect to the ALJ's observation that Dr. Praamsma is neither a pulmonary specialist nor an orthopedic surgeon, such hardly seems relevant. While Plaintiff's impairments were quite serious, they were not so unusual or out of the ordinary that only a specialist could offer competent commentary regarding such. Likewise, Dr. Praamsma did not proffer the sorts of opinions that one would only expect from a physician with a particular specialty. Instead, the doctor, based upon his many years of treating Plaintiff and her various impairments, offered reasoned insight

14

and opinions concerning Plaintiff's functional limitations. Dr. Praamsma's opinions cannot be so cavalierly discounted. The Court also notes that the doctor whose opinion the ALJ has accorded "significant weight," Dr. Michael Simpson, who examined Plaintiff on only a single occasion prior to the ALJ's decision, is likewise neither a pulmonary specialist nor an orthopedic surgeon.[3]

As for the ALJ's observation that the record does not contain evidence concerning Plaintiff's low back problems that support Dr. Praamsma's opinions, the Court disagrees. A December 2005 MRI examination revealed that Plaintiff was suffering from severe and deteriorating spinal impairments, a conclusion later confirmed by a November 2008 MRI. The medical evidence detailing Plaintiff's struggles with COPD and sleep apnea are also consistent with, and support, Dr. Praamsma's opinions. Likewise, Plaintiff's reported activities are consistent with the doctor's opinions. In sum, the ALJ's rationale for discounting Dr. Praamsma's opinions is not supported by substantial evidence.

      b.    The ALJ's Decision to Discount Plaintiff's Subjective Allegations is not Supported by Substantial Evidence

As noted above, Plaintiff testified that she experienced lower back pain which often required that she lay in a reclining position for approximately 30 minutes several times daily. Plaintiff testified that she experienced constant breathing difficulties which were only partially relieved by her use of oxygen and inhalers. Plaintiff testified that as a result of her significant sleeping difficulties, she must take several naps throughout the day. The ALJ concluded that

---

[3] On February 6, 2012, the Defendant submitted an amended administrative transcript. (Dkt. #13). Neither the original administrative transcript nor the amended administrative transcript contain any evidence that Plaintiff was examined by Dr. Simpson prior to ALJ Reamon's October 24, 2008 decision. The record does contain the results of a March 9, 2009 consultive examination conducted by Dr. Simpson, presumably in connection with Plaintiff's subsequent successful application for benefits. (Tr. 483-86).

Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 46). Plaintiff asserts that the ALJ improperly discounted her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the

alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

A review of the ALJ's basis for discounting Plaintiff's subjective allegations does not survive scrutiny. Aside from the conclusory statement quoted above, the ALJ offered absolutely no rationale for his decision to discount Plaintiff's subjective allegations of pain and limitation. While the ALJ may not be obligated to articulate in excruciating detail the reasoning behind his credibility determination, he is required to articulate some rationale for his decision to discount Plaintiff's subjective allegations of pain and limitation. In this case, the ALJ offered absolutely no reasoning for his decision in this regard, but instead merely offers the boilerplate conclusion quoted above. Such is an insufficient basis for discounting Plaintiff's subjective allegations, which the Court notes

are entirely consistent with the evidence of record. The Court concludes, therefore, that the ALJ's rationale for discounting Plaintiff's subjective allegations is not supported by substantial evidence.

          c.       The ALJ's RFC Determination is not Supported by Substantial Evidence

As detailed above, the ALJ assessed Plaintiff's residual functional capacity and concluded that Plaintiff retains the ability to perform a limited range of sedentary work. The ALJ's RFC determination, however, is premised on his unsupported evaluation of Plaintiff's credibility, as well as his unsupported rejection of Dr. Praamsma's opinions. Furthermore, the medical evidence fails to support the ALJ's RFC determination. Thus, the Court finds that the ALJ's RFC determination is not supported by substantial evidence.

The vocational expert testified that given Plaintiff's RFC, there existed a significant number of jobs which Plaintiff could perform despite such limitations. However, the ALJ's RFC determination is not supported by substantial evidence. Because the vocational expert's testimony was premised upon a faulty RFC determination, the ALJ's reliance thereon does not constitute substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments).

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of her disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). In this case, the Court finds that there does exist compelling

evidence that Plaintiff was disabled between the dates of November 4, 2005, and October 24, 2008. The medical evidence detailed above supports this conclusion, as does the testimony of the vocational expert that if Plaintiff were impaired to the extent articulated by Dr. Praamsma, there existed no work which Plaintiff could perform. (Tr. 601-03).

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Moreover, the Court finds that there exists compelling evidence that Plaintiff was disabled during the time period in question. Accordingly, the Commissioner's decision is **reversed and this matter remanded for payment of benefits for the time period from November 4, 2005, through October 24, 2008**. A judgment consistent with this opinion will enter.


Date: September 20, 2012                             /s/ Ellen S. Carmody
                                                     ELLEN S. CARMODY
                                                     United States Magistrate Judge